U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 MAR 18  AM 11: 38

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STACIE SIMMONS,                    )
                                   )
      Plaintiff,                   )
                                   )
      v.                           )        Case No. 5:14-cv-00078
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY,                          )
                                   )
      Defendant.                   )

**OPINION AND ORDER**
**(Docs. 12, 13)**

Plaintiff Stacie Simmons brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). Pending before the court are Simmons's motion to reverse the Commissioner's decision (Doc. 12) and the Commissioner's motion to affirm the same (Doc. 13). For the reasons stated below, the court GRANTS Simmons's motion, DENIES the Commissioner's motion, and REMANDS for further proceedings and a new decision.

I.      **Background**

Stacie Simmons was thirty-one years old on October 26, 2010, the date she filed her application for SSI benefits. (AR 10.) Simmons has been diagnosed with bipolar disorder; bulimia nervosa; posttraumatic stress disorder ("PTSD"); and polysubstance dependence. (AR 382, 420, 538.) She also suffers from asthma, tennis elbow, injuries to her right shoulder and left wrist, and a hearing disorder in her right ear. (AR 78, 382.) Simmons receives periodic cortisone shots to treat her tennis elbow, and she wears a hearing aid in her right ear. (AR 87, 261.)

Simmons has an eighth grade education. (AR 76-77, 221.) As a child, she suffered physical, emotional, and sexual abuse. (AR 419, 462.) She has been married twice and was

1

physically abused by both of her ex-husbands. (AR 419.) She has a history of mental illness, and was hospitalized twice as a teenager after attempting suicide. (AR 462.) In 2011, Simmons left her abusive relationship in Rochester, New York and moved with three of her children to a shelter in Vermont. (AR 419.) She currently lives in an apartment with her three children. (AR 77.) While she had substance abuse issues in the past, Simmons had abstained from cocaine, marijuana, and alcohol use for significant periods of time as of her hearing date. (AR 83-84.) Simmons has worked in the past as a machine operator at a materials supply company, a fast food restaurant cashier, a bindery worker, and a caregiver for her niece. (AR 79, 99-100, 237.)

During the typical week, Simmons attends therapy and a group session for anxiety. (AR 83.) She also cleans, cooks, "get[s] [her] kids to school," and otherwise cares for her children. (AR 86, 227.) Sometimes she cannot cook, in which case her children do. (AR 229.) Simmons shops for groceries and other necessities once per month, and has someone accompany her. (AR 230.) She otherwise only goes outside to attend her appointments. (*Id.*) She does not drive, and relies on neighbors, case workers, or taxi services for transportation. (AR 70, 78.)

Simmons claims that her social phobia and anxiety render her unable to go out in public or to be around people. (AR 60.) She states that her social phobia prevents her from maintaining a job, because being around other people makes her anxious and paranoid. (AR 97.) Simmons also claims to have problems paying attention and problems dealing with authority figures. (AR 233.) She testified that her social phobia and anxiety cause her to have a panic attack ninety-nine percent of the time she leaves her residence. (AR 82.) Simmons also testified that she undergoes cycles of mania and depression, and that while she is depressed she has trouble getting out of bed, cleaning, and cooking. (AR 91.) Simmons uses Abilify and Celexa to help control her symptoms of anxiety and depression. (AR 261.)

Simmons first applied for SSI under Title XVI of the Social Security Act, in addition to disability benefits under Title II of the Act, on June 19, 2008. (AR 111.) Her application was denied, and a hearing was held on July 7, 2010, before Administrative Law Judge ("ALJ") James E. Dombeck. (AR 44.) ALJ Dombeck issued an unfavorable decision on October 1, 2010. (AR 108-26.) The record does not indicate whether Simmons appealed ALJ Dombeck's decision. (Doc. 12 at 1 n.1.)

On October 26, 2010, Simmons applied a second time for SSI benefits, alleging a disability onset date of October 2, 2010. (AR 10.) Her application was denied, and she timely requested an administrative hearing. (AR 127-28, 139.) The hearing was conducted on December 18, 2012 by ALJ Matthew G. Levin. (AR 73.) Simmons appeared and testified, and was represented by an attorney. (*Id.*) A vocational expert ("VE") also testified at the hearing. (AR 98-107.) The ALJ found that Simmons had not been disabled from her application date through January 11, 2013, the date of his decision.[1] (AR 7-19.) The Appeals Council denied Simmons's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1.) Simmons appealed to this court on April 24, 2014.[2] (Doc. 2.)

## II.    The ALJ's Decision

"Disability" under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will be found disabled only if it is determined that her "impairments are of such severity that [s]he is not only unable to do h[er] previous work[,] but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In evaluating disability claims the Commissioner uses a five-step procedure. *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). At step one the ALJ must determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b),

---

[1] SSI benefits are not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335. Therefore, the relevant period of inquiry regarding disability extends from October 26, 2010—the date Simmons filed her current application for SSI—through January 11, 2013—the date of the ALJ's decision. *Heburn v. Astrue*, No. 6:05-CV-1429 (LEK/DEP), 2009 WL 174941, at *4 n.4 (N.D.N.Y. Jan. 23, 2009) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 n.1 (2d Cir. 1999)). The ALJ noted that he considered Simmons's complete medical history consistent with 20 C.F.R. § 416.912(d). (AR 10.)

[2] 42 U.S.C. § 405(g) allows an applicant for SSI to obtain a review of any final decision of the Commissioner within sixty days after the notice of the decision was mailed, "or within such further time as the Commissioner of Social Security may allow." The Commissioner does not object to the timing of the commencement of this action.

416.920(b). If she is not, step two requires the ALJ to determine whether she has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, at step three he determines whether the severe impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984.)

If the claimant is not presumptively disabled, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the most the claimant can do in a work setting despite her limitations based on the relevant evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the ALJ considers whether the claimant's RFC precludes the performance of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). At the fifth and final step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proof in the first four steps; at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Employing the five-step procedure, the ALJ first determined that Simmons had not engaged in any substantial gainful activity since her application date of October 26, 2010. (AR 12.) At step two, the ALJ found that Simmons had the following severe impairments: "bipolar disorder, posttraumatic stress disorder, and asthma." (*Id.*) At step three, the ALJ found that Simmons did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listings. (AR 13.)

The ALJ then found that:

> [Simmons] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [she] should avoid concentrated exposure to dust, odors, gasses, and fumes. She is limited to simple unskilled work in a low stress environment, which is defined as involving limited to no change in the work setting and little to no need for the use of judgment. She can have no social interaction with the general public, limited interaction with coworkers, and occasional interaction with supervisors. [She] is able to sustain attention and concentration for two-hour increments throughout an 8-hour workday.

(AR 14.)  The ALJ found that Simmons was unable to perform any of her past relevant work. (AR 17.)  The ALJ then concluded based on Simmons's RFC and on the VE's testimony that there are other jobs in significant numbers in the national economy that Simmons could perform, such as price marker, production helper, and classifier of laundry.  (AR 18.)  Finally, the ALJ concluded that Simmons had not been under a disability from her SSI application date of October 26, 2010 through the date of his decision.  (AR 19.)

### III.    Standard of Review

This court reviews "the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence is 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'"  *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).  The court should keep in mind "the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

### IV.    Analysis and Conclusions

Simmons argues that the ALJ's failure to consider the opinion of her treating therapist constitutes reversible error.  She also argues that the ALJ's decision to give limited weight to the opinion of her treating physician, David Mooney, MD, was not supported by substantial evidence.  Finally, she contends that the ALJ's determination of her RFC is not supported by substantial evidence to the extent it does not account for her inability to respond appropriately to coworkers and supervisors.

## A.    Treating Source Opinions

The opinion of a treating physician is normally entitled to "controlling or at least greater weight." *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000). Controlling weight is accorded if "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). "A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ does not afford a treating physician's opinion controlling weight, he or she must explain why, taking into account the factors listed at 20 C.F.R. § 404.1527(c), including:

> (i) [T]he frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

### i.    The Opinion of Licensed Clinical Social Worker Virginia Havemeyer

The record contains two treating source opinions, both signed by Dr. Mooney. (AR 549-53; AR 554-58.) Simmons claims that the second medical source statement in the record, dated November 29, 2012, was filled out by Virginia Havemeyer, a social worker at Lamoille Community Connections, and that it should therefore be attributed to her and treated as a second treating source opinion. (Doc. 12-1 at 11-12.) She argues that the ALJ "failed to discuss or make any findings with respect to" this medical source statement, and that this constitutes reversible error. (*Id.* at 11-12.)

Simmons is correct that the ALJ should have attributed the medical source statement to Havemeyer. The statement is attributed to Havemeyer on the list of exhibits, and Simmons informed the ALJ at the hearing, through her attorney, that the statement was filled out by Havemeyer and signed by Dr. Mooney. (AR 105.) Although Dr. Mooney and Havemeyer are affiliated with the same organization, it appears that they both treated Simmons separately—the

record contains separate treating notes for both treating sources. Nor is there any evidence, other than the signature, that Havemeyer did not fill out the statement. The ALJ erred in failing to attribute this treating source statement to Havemeyer and to evaluate its weight accordingly, and this error requires remand.

The treating physician rule—requiring an ALJ to give controlling weight to treating source opinions as long as certain conditions are met—applies only to "acceptable medical sources." 20 C.F.R. § 404.1513(a). These include licensed physicians, psychologists, optometrists, podiatrists, and speech pathologists. *Id.* A licensed social worker is not an "acceptable medical source" whose opinion an ALJ is required to give controlling weight.

However, as Simmons correctly argues, an ALJ is still required to consider evidence from other treating sources. Social Security regulations direct ALJs to evaluate medical opinions from other sources in the same way they evaluate treating physician opinions. SSR 06-03p, 2006 WL 2329939, at *3-4 (Aug. 9, 2006); *see also* C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). Although ALJs are not required to accord controlling weight to treating source opinions from non-acceptable medical sources, they must nonetheless consider such opinions and determine what weight to assign them using the regulatory factors listed above. *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344-45 (E.D.N.Y. 2010) ("While the ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, the ALJ had to explain that decision.").

Here, the ALJ recognized at the hearing, but not in his decision, that the second medical source statement in the record expressed the separate and additional opinion of Simmons's treating therapist. Havemeyer opined that Simmons faced marked restrictions in activities of daily living; marked difficulties in maintaining concentration, persistence, or pace; and extreme difficulty in maintaining social functioning. (AR 556.) She also opined that Simmons would cease to function effectively when receiving criticism from supervisors or encountering conflicts with coworkers. (AR 557.) She expected Simmons to have difficulty responding appropriately to coworkers, supervisors, the general public, and changes in a routine work setting. (*Id.*) Havemeyer also opined that Simmons would not be able to concentrate on job tasks for two-hour

periods of time during an eight-hour work day. (*Id.*)  Havemeyer cited Simmons's history of abuse, PTSD, "depression/mania," and anxiety as the medical findings supporting her opinions. (AR 558.)

The ALJ made no determination whether Havemeyer's opinions were supported by the record as a whole or by her own treatment notes, which cover a longer period of time than Dr. Mooney's.  Havemeyer's records noted Simmons's anxiety as well as her fear of leaving her house and aversion to other people. (*E.g.*, AR 438.)  Had the ALJ determined to give any weight to Havemeyer's opinions, they may have resulted in a more limited RFC finding. *See* SSR 06-03p (noting that evidence from non-acceptable medical sources may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function").  The ALJ's failure to appropriately evaluate and consider Havemeyer's opinion warrants remand. *See Silberman v. Astrue*, No. 08 Civ. 03398(RMB)(THK), 2009 WL 2902576, at *10 (S.D.N.Y. Aug. 14, 2009) ("Failure to [explain the weight given to each source] is grounds for remand."); *White v. Comm'r of Soc. Sec.*, 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (reversing and remanding to Commissioner where "the ALJ should have considered [the social worker's] records as 'other source' evidence.").  On remand, the ALJ should recognize that the second treating source statement in the record promotes Havemeyer's opinion, and he should evaluate her opinion taking into account the regulatory factors listed at 20 C.F.R. § 404.1527(c).

### ii.  The Opinion of Treating Physician Dr. Mooney

Dr. Mooney is a psychiatrist affiliated with Lamoille Community Connections who began treating Simmons in May 2012. (AR 553.)  On November 26, 2012, he filled out and signed a medical source statement regarding Simmons's ability to do work-related activities.[3] (AR 549-53.)  Dr. Mooney opined that Simmons faced marked restrictions in activities of daily living and extreme difficulty in social functioning and maintaining concentration, persistence, or pace. (*Id.*)  He further opined that Simmons would cease to function effectively when receiving criticism from supervisors or encountering conflicts with coworkers. (AR 552.)  He expected her to have

---

[3]  The court has determined that the second opinion in the record should be attributed to Havemeyer, so it focuses here only on the first opinion.  The ALJ attributed both statements in the record to Dr. Mooney.  Because both of the opinions are substantially similar, which opinion(s) is attributed to Dr. Mooney for the purpose of reviewing the ALJ's decision to accord Dr. Mooney's opinions limited weight does not affect the analysis.

difficulty responding appropriately to coworkers, supervisors, the general public, and changes in a routine work setting. (*Id.*) He opined that she would not be able to concentrate on job tasks for two-hour periods of time during an eight-hour work day. (*Id.*) He predicted that Simmons "would likely choose to terminate her position as she would be overwhelmed." (AR 553.) He also noted that she had experienced at least four episodes of decompensation of extended duration, defined as two-week-long episodes of exacerbated symptoms and loss of social functioning occurring on average once every four months. (AR 551.) Dr. Mooney cited Simmons's "severe PTSD" and the fact that she "is the victim of various forms of trauma" as the medical findings supporting his opinions. (*Id.*)

The ALJ gave limited weight to Dr. Mooney's opinions for several reasons. He concluded that they were inconsistent with the totality of the medical evidence on record, which he found "consistently indicate[s] intact concentration, attention, and memory, and normal speech." (AR 17.) He also concluded the record revealed no evidence of any episodes of decompensation of extended duration during the relevant period. (*Id.*) He also found that Dr. Mooney's opinions were inconsistent with his own treatment notes. (*Id.*)

The court notes that the ALJ's evaluation of Dr. Mooney's opinions was procedurally sound. The reasons he gave for according Dr. Mooney's opinions limited weight are sufficiently "good." *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no . . . slavish recitation of each and every [regulatory] factor where the ALJ's reasoning and adherence to the regulation are clear.")

Moreover, the ALJ's conclusion that Dr. Mooney's opinions are inconsistent with his own treatment notes is supported by substantial evidence. During his May 3, 2012 initial evaluation of Simmons Dr. Mooney assigned her a GAF score of 70.[4] (AR 421.) "GAF scores from 61-70 indicate some mild symptoms or some difficulty in social, occupational, or school situations, but [also indicate] general functioning and the existence of some meaningful personal relationships." *Petrie v. Astrue*, 412 F. App'x 401, 406 n.2 (2d Cir. 2011) (citing American

---

[4] Simmons argues that the ALJ improperly determined that she was not disabled on the basis of this GAF score because it is the only one he cited in his opinion. (Doc. 12-1 at 11, 13-14.) However, the ALJ cited this GAF score primarily as evidence that Dr. Mooney's opinions are inconsistent with his treatment notes—not as determinative evidence that Simmons was not disabled. (AR 17.)

Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text revision, 2000)).  Dr. Mooney also observed that she was anxious but had good hygiene, was logical and linear, maintained good eye contact, was cognitively intact, and her memory was intact. (AR 421.)  Dr. Mooney's subsequent treatment records noted Simmons's anxiety and psychomotor restlessness, but also noted good hygiene, good eye contact, logical and linear speech, euthymic mood with full affect, good insight and judgment, no evidence of psychosis, intact memory, and further noted that she was insightful, engaged, and well-groomed. (AR 402-06.)  These observations are inconsistent with his November 26, 2012 opinion that she faced marked restrictions in activities of daily living, extreme difficulty in maintaining concentration, persistence, or pace, and that she had difficulty concentrating or thinking. (AR 549-51.)

Additionally, although Dr. Mooney recorded that Simmons described "a previous depressive episode in '06 when she was in bed for 2 weeks" (AR 420), there is otherwise a lack of evidence to support Dr. Mooney's opinion that Simmons experienced four or more episodes of decompensation of extended duration. *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009) ("[A] lack of evidence of severe impairment constitutes substantial evidence supporting a denial of benefits . . . .").

However, the ALJ's conclusion that the totality of the medical evidence on record was inconsistent with Dr. Mooney's opinion cannot be supported by substantial evidence because the totality of the medical evidence on record necessarily includes Havemeyer's opinion and treatment notes, which the ALJ failed to appropriately consider. *See Guzman v. Astrue*, No. 09 Civ. 3928(PKC), 2011 WL 666194, at *9 (S.D.N.Y. Feb. 4, 2011) ("[T]he treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts.").  Although the ALJ cited to numerous pieces of evidence in Simmons's medical record that do not support Dr. Mooney's findings, he must reevaluate Dr. Mooney's opinion in light of the fact that the totality of the medical evidence on record includes another treating source opinion consistent with Dr. Mooney's. *See Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008) (holding that the court "cannot determine whether the ALJ's decision . . . [was] supported by substantial evidence" where it could not "discern whether the ALJ properly considered all [relevant] evidence").

10

**B.     The ALJ's RFC Determination**

Simmons argues that the ALJ's RFC determination is not supported by substantial evidence because it does not account for her inability to interact appropriately with coworkers and supervisors. (Doc. 12-1 at 14-17.)  She relies heavily on Dr. Mooney's and Havemeyer's opinions and treatment notes to support her argument.  Because the ALJ must reevaluate the opinions of both of Simmons's treating sources on remand, he must necessarily also re-calculate Simmons's RFC in light of the weight he accords both opinions.  Therefore, the ALJ's RFC determination was not supported by substantial evidence to the extent it was not informed by both treating source opinions, weighted appropriately. *See Toth v. Colvin*, No. 5:12-CV-1532 (NAM/VEB), 2014 WL 421381, at *7 (N.D.N.Y. Feb. 4, 2014) (concluding that ALJ's RFC determination could not be sustained where review was frustrated by ALJ's failure to comply with treating physician rule).

**V.     Conclusion**

For the reasons stated above, Simmons's motion to reverse the Commissioner's decision is GRANTED, and the Commissioner's motion to affirm is DENIED.  The court REMANDS the matter for further proceedings and a new decision consistent with this opinion.

Dated at Rutland, in the District of Vermont, this 18th day of March, 2015.

Geoffrey W. Crawford, Judge
United States District Court